trial of this group, he fears that if he is returned to the Philippines, this group would hunt him and kill him, not just him but also his family. Now, during the hearing in San Francisco, the immigration judge refused to consider whether Mr. Kalimlim is a refugee in the statutory definition of a refugee. The judge plainly stated in his decision that because Mr. Kalimlim reported the names of 20 people who are corrupt government officials, he is considered as a persecutor. And the judge stopped there. The judge says that because he is a persecutor, we need not go to examine or determine whether he is a refugee within the meaning of the statute. Your Honor, we suggest that by reporting names of 20 corrupt government officials does not amount to being labeled as a persecutor, and thereby he does not deserve to be... Well, let's assume, because it was found in terms of credibility, that he did know that there was this one guy whose name he reported who was, in fact, killed. And maybe his report contributed with others to that killing. What is the standard that we apply to deciding whether somebody is a persecutor? In other words, if that was what the findings are, and that's what the findings are, would you argue if all of that was true, that he was not a persecutor, and why? In other words, how actively involved does he have to be? If he's reporting names, but not doing anything else, but he knows that the people, that the organization is killing people, if they find them through these name reports, then what? Is he a persecutor? We submit, Your Honor, that to be a persecutor, you have to have conduct that, you have to have some intent, and followed by some action that results in the torture, maiming, or killing of people. Just by reporting, just by giving names of 20 individuals, does not amount to that, Your Honor. And such as... Because he doesn't have the intent, or because even if he had the intent, he still wasn't actively enough involved? That's all he is. He's an informant. Is it because he doesn't have the intent? Suppose he intended this person to get killed, but that's all he did, he just reported people. He doesn't have the intent, nor did he do any action to persecute anyone. How do we know he didn't have the intent? I'm sorry, Your Honor? You're saying he didn't have the intent. How do we know that? There was nothing on the record that says that he knew that people would be killed by reporting 20 names. You're now fighting with my hypothetical. The finding was that he did know, right? He knew that, based on reading the newspapers, that people were being killed by the NPA. That's all he knew. He didn't know that by reporting 20 names, those people would be killed. That's the difference, Your Honor. And that's really all he did. He reported 20 names. What was the purpose of reporting the names? That was because the NPA had... Corrupt officials. Yes. The ideology of the NPA is to root out corrupt government officials. How does he root out corrupt officials? The NPA did this by executing corrupt officials in the past. Did he know that, or he didn't know that these particular people were going to be killed, or what? No, he didn't know. All he knew was that they were going to be given some kind of a warning. A warning of what? A warning that you better do something or you're going to get killed. I mean, what does it mean to give a warning? A warning of what? Yes. Well, the warning was, straighten up or something is going to happen. Whether he actually knew that they were going to be killed or not, there's nothing on the record that says that. There's nothing on the record that he intended for these people to be killed or executed. So we believe that... Persecution does not have to rise to the level of a killing. That's correct, Your Honor. It doesn't have to. A little beating now and then might sort of wake somebody up. That has been labeled as persecution, Your Honor, in the past. Sit and nap down the street. That's correct, Your Honor. There's also persecution. But what we're saying is that by reporting 20 names and labeling the person a persecutor is simply just overreaching, and it's not in any statutory regulation. That's the basis. That's the gist of the case. Our client, my client, is prevented from being determined to be examined as a refugee simply because he reported 20 names. So your argument is that it's because of his state of mind. I mean, in other words, if somebody else reported 20 names and knew that they would be followed up and if they were found to be corrupt, they would be killed, then that person would be a persecutor, but your person wouldn't be. Is that basically your argument? That's correct, Your Honor. So it's a state of mind, subjective state of mind. He's got to have some intent. That's correct, Your Honor. You want to save the balance of your time for rebuttal? Yes, Your Honor. Thank you. May it please the Court. James Grimes for the government. Your Honor, in this immigration case, Calum Lim is not, Petitioner Calum Lim is not entitled to asylum or withholding of deportation because, as the immigration judge found, he was not credible and because he assisted in the persecution of others. Now, initially, I think it's important to address the burden that should apply in this case. At page 15 of his brief, Mr. Calum Lim concedes that the burden of proving, he bears the burden of proving that he did not assist in the persecution of others and, in fact, that is how the burden works under the regulation, which is 8 CFR 208.13 C2II. Once the government meets its burden of production, the burden shifts to Calum Lim to prove that he did not assist in the persecution of others. So before this Court, Calum Lim must show that the record compels the conclusion that he did not assist in the persecution of others. In other words, he must point to compelling evidence that demonstrates that he did not help persecute anyone. And the problem with his case is, as the immigration judge found at page 59 of the record and as the record demonstrates, he has not produced any evidence to demonstrate that he did not assist in the persecution of others. Rather, his argument is, for example, at page 18 of his brief, that there is no evidence that anyone died as a result of his actions. Well, first off, that's incorrect. But secondly, that doesn't really go to meeting his burden of coming forward with affirmative actual evidence, either that he did not assist in persecution of others or that the people that he reported on were not killed. The fact that there's no evidence only further demonstrates that his claim must be denied, and that's the point. Calum Lim has the burden in this case. So the fact that he is unable to point to any evidence to assist him in bearing his burden demonstrates that his claim must be denied. Now, he puts stock in the assertion that mere membership in the NPA might not be enough to demonstrate that he was a persecutor. But once he has conceded that he bears the burden and must demonstrate that he did not assist in persecuting others, that fact is irrelevant because that goes only to the government's initial burden of production, which he has conceded the government has met. And, in fact, the government did meet that burden of production. So that's not really even an issue before the court. He claims there's no evidence that anyone died as a result of his actions. Well, we know that at least Major Pring died. And secondly, the fact that he... We don't know that it was a result of his actions. But in your theory, that wouldn't matter because he still hasn't met his burden. We know that he reported Mr. Pring and Mr. Pring died. But for all we know, Mr. Pring... Seventy-five other people reported Mr. Pring and that wasn't why he died. But on your theory, that really wouldn't matter. That's correct, Your Honor. Under our theory, that is the state of the law. He... Once the government meets his burden of production, then he, as he admits, then he has to show that he did not assist in the persecution of others. And he hasn't presented any evidence of that. That's simply what this case comes down to. If it were sufficient to say there's no evidence for him to meet his burden, then the government can meet its burden in other contexts of showing that there was evidence of changed country conditions simply by saying that there was no evidence that country conditions had not changed. Simply put, if a party bears the burden on an issue, then the party has to come forward with some evidence to support that party's burden. And even if we look at... To his story, believing his claim requires us to believe his absurd claim that he didn't know what the NPA was doing. This morning, he admits... He now says that he knew that the NPA was killing people. When he testified, he said that he read about that, but he didn't believe it, that he was willfully ignorant of that fact. He admitted that he knew the NPA was involved in kidnapping. And he believes that because he says that he didn't know the NPA was involved in killing, he should be absolved of responsibility for assisting the NPA. There's remarkably little law on this provision. Is that because it just happens very rarely, or do you know why? I believe so, Your Honor. I didn't write the government's brief, and so as I was preparing for this weekend, I did find a case that I will cite when I return to my office in a 28-J that addresses how the burden works. And I can... Not just on the burden, but on the whole persecutor. That's correct, Your Honor. I believe Rodriguez-Mahano from the board addresses the issue that's cited in our brief. And that decision indicates that his intent, his subjective intent, is irrelevant, so long as he actually is assisting groups that are persecuting, and his actions result in persecution of others. So his intent doesn't really bear on the issue. And his position really doesn't... That's kind of odd, just because the whole statute is set up around subjective intent. In other words, in order to prove his refugee status, he has to prove the subjective intent of others. That's correct, Your Honor. And yet he doesn't have to prove his own subjective intent here? That is what the board determined. I mean, there might be a question of how you prove a subjective intent. Pardon me, Your Honor? There might be issues as to how you prove it. I mean, knowing that these people are killing people, and knowing that he's reporting people might be enough on a constructive intent there. I believe it would. And fortunately, in this case, I don't believe the court has to confront that issue, because we have the evidence of what the NPA was doing. He claims he didn't know the NPA was involved in killing. He said he was a member of the NPA for at least three years. Well, that's what the NPA did. They terrorized and they terrorized people. They killed people. They kidnapped people. That's like saying you're a member of the Boy Scouts. You don't know that they like to go camping. That's what the NPA did. He demonstrates really the absurdity of his position by attacking the immigration judges, finding that he should have known that he was delivering marijuana because of the armed guards around the truck that he was driving. He says, well, I shouldn't have been suspicious of there being armed guards because the NPA is a violent guerrilla organization. So on the one hand, he says, look, we all know it's a violent guerrilla organization. But on the other hand, he says, I didn't know what the NPA was doing. He says he didn't know he was delivering marijuana. But then somehow, we look at his testimony pages 94, 95 of the record, he knew where the marijuana was being grown. And he took the police there. His claim, when we get to the merits, his claim really comes down to the fact that when it's convenient for him to be ignorant, he's ignorant. And when it's convenient for him to know where the marijuana is or to know suddenly that the NPA is going to kill him, even though he didn't think the NPA was involved in other killings, he suddenly knows that. His case raises any number of questions. How did he know where the marijuana was if he didn't think he was driving marijuana? How did he know the NPA was going to kill him if he didn't think the NPA was involved? And that isn't the answer because he thought they were growing vegetables. He knew where they were growing vegetables. Pardon me, Your Honor. He thought that he was transporting vegetables. And he claimed that's where they were growing vegetables. That piece doesn't seem confusing. At the bottom of page 94 of the record, I believe he was asked if he could tell where the marijuana was, where it was being grown. And as he continues on to the next page, he says, the police then went and surveilled where the marijuana was. I believe that's, if Your Honor looks to those specific provisions of the record, it does indicate that. It's just simply absurd. We all know what the NPA does. And yet the only person who was involved in this case who was actually a member of the NPA is the only one who says he didn't know what they were doing. Even if we believe him, he was willfully ignorant of what the NPA was doing. He certainly admitted he knew the NPA was involved in kidnapping. And even if we disregard all the foregoing, it does bear noting that, as he concedes at page 17 of his brief, membership in an organization will be sufficient to deny someone asylum if that person's actions or inactions somehow assist or somehow further the persecution of others in some way. But let me ask a conceptual question. You start your brief out with a Chevron rule. Do we have to get to that? I would have real problems, frankly, invoking Chevron to defer to an IJ in a streamlining case where the BIA never decided whether it thought the IJ's interpretation was right or wrong. Does it matter? Does Chevron matter at all here? In this case? Yes. You start with Chevron. The brief starts with Chevron. I understand you didn't write it, but it starts with Chevron. In this case, it doesn't matter because his claim's absurd. I mean, that's simply what it comes down to. He asked his court to believe that he didn't know what the NPA was doing. And that's just really, it's silly. And he drove a truck for the NPA for three years driving what he says were vegetables. He certainly knew the NPA was involved, was an organization involved in kidnapping people. He gathered intelligence for the NPA. He certainly, his actions were furthering the goals of the NPA. And at page 22 of his brief, he says that they were further, it was necessary to achieve the NPA's political goals. So even he recognizes larger context of his actions. At one point, he says he was involved in a civil war. Well, that really doesn't hold water under this court's case law because if the NPA was really involved in a civil war, then no one who ever claimed persecution by the NPA could ever have been granted asylum. So because he's not credible, because he assisted in the persecution of others, because he has not met his burden, it is clear that the record fully supports the immigration judge's decision and the immigration judge must be affirmed. And for those reasons, unless there are any further questions, we ask that this court do just that. Thank you. Thank you. A couple more quick points, Your Honor. First of all, there was nothing in the record that says that the names, any of those names that he submitted to the NPA absolutely settled in the persecution of those people. There was nothing on the record that any people were killed. So there were probably no persecution at all. And if there's no persecution, then he is not a person. One of the people he reported was killed. No, he didn't know about it. There was no connection between reporting that person and that person being killed. There was nothing clear in that record that states that. What about the government's burden argument? Well, the judge never got to the burden. The judge says, well, he gave the names of 20 peoples and he is a persecutor. And that's it. We won't even look at the burden, whether the petitioner met the burden or not. And that's what's so bothersome about this decision of the judge. He stopped right there and then. He gave 20 names and he's a persecutor. That's it. You're not qualified for any deportation relief. He knew that the people whose names he was giving were going to be warned, right? I'm sorry. He knew that the people whose names he was giving were going to be warned. Right. Right. What does that mean? What does that mean other than threatened? That's all he thought was going to happen. That's not persecution? That's that. I don't. That's not persecution, Your Honor. There has to be something more serious than that. Case is vetted. Thank you. Thank you. Matter will stand submitted. Let's see. Our next case on this morning's calendar is Pond versus Greenwell. Mr. Hennifer, I believe, represents Mr. Greenwell, the appellant. Good morning, Your Honors. May it please the court, counsel James A. Hennifer on behalf of the defendant and appellant Christopher Greenwell. There are really three issues here. The first issue, of course, is the interplay between Federal Rules of Civil Procedure Rule 41A2 and the Federal Arbitration Act, and whether or not Rule 41A2 may trump the Federal Arbitration Act, Section 4, with a petition pending to compel arbitration. The second— I don't understand why that's the question. All that happened here, as I understand it, is that your—the plaintiff filed a lawsuit.
judges: Leavy, Paez, Berzon